## A05A0745. DAVIS v. THE STATE.
### (615 SE2d 203)

RUFFIN, Chief Judge.

A jury found Norman Davis guilty of child molestation, aggravated child molestation, and kidnapping. Proceeding pro se, Davis appeals, asserting multiple enumerations of error. For reasons that follow, we find his assertions of error lack merit and affirm.

Viewed in a light most favorable to the verdict, the record shows that 14-year-old M. J. met Davis in late September 1999. On September 29, M. J. and her sister encountered Davis, who was driving a green Honda. Davis offered to drive the two girls and their friend, Miranda, to an after-school program. Later that evening, Davis announced that he was hungry, and M. J. suggested that they drive to a sandwich shop.

Rather than driving to the restaurant, however, Davis drove M. J. down a road toward a lake. Davis attempted to fondle M. J.'s breast,

and she told him to stop and that she wanted to go home. According to M. J., Davis then grabbed her between her legs, and she began kicking. After M. J. started struggling, Davis grabbed her around the neck and struck her face, rendering her unconscious. When M. J. regained consciousness, her clothing had been removed, she was on the ground behind the car, and Davis was engaging in intercourse with her. Davis also attempted to penetrate M. J.'s anus. Although M. J. told Davis "it hurt," he did not stop.

Eventually, Davis returned M. J.'s clothing to her and wondered aloud whether he should kill her or just let her go. Davis concluded that he would not kill M. J. because she was too young. However, Davis ordered her to get into the trunk of his car, and she complied. In the trunk, M. J. saw a dinner bowl, utensils, and car wax. Davis drove around for approximately 20 minutes, stopped, opened the trunk, and told M. J. to "get out." Davis placed a green towel on the back seat of the car and ordered M. J. to remove her clothing. M. J. testified that she followed Davis's instructions because she was afraid of him. Davis then had intercourse with M. J. again on the back seat of the car.

The next day, a relative of Davis drove M. J. to her home. Initially, M. J. was afraid to tell her family what had happened, but she eventually told them. Wendell Cofer, an investigator from the Decatur County Sheriff's Office was assigned to investigate the case. Cofer met with M. J. on October 3, 1999, and noticed that her eye was swollen shut. Cofer took M. J. to the hospital for an examination, during which doctors documented that she had a bruised eye, an abrasion on her neck, and an anal-rectal tear.

Davis was arrested, and police searched an area near his relative's house and discovered a plastic bag that contained several items including a green towel. Davis then agreed to speak with Cofer, and he admitted that he had intercourse with M. J., but claimed that it was consensual. Cofer subsequently executed a search warrant on the green Honda and discovered the dinner bowl and car wax that M. J. had seen in the trunk of the car. Based upon this, and other evidence, the jury found Davis guilty of child molestation, aggravated child molestation, and kidnapping.

1. Initially, we must determine whether Davis's allegations of error have been preserved for appellate review. As a general rule, this Court will not address arguments that are raised for the first time on appeal.[1] This is so because "we are a court for the correction of errors of law committed in the trial court, and fairness demands that legal

---

[1] See *Holmes v. State*, 271 Ga. App. 122, 123 (1) (608 SE2d 726) (2004); *Wooten v. State*, 240 Ga. App. 725, 727 (2) (b) (524 SE2d 776) (1999).

issues be [first] raised in the trial court."[2]

Here, the evidence shows that Davis filed a motion for new trial on May 1, 2000, in which he challenged the sufficiency of the evidence and alleged that he received ineffective assistance of counsel. In August 2004, the trial court conducted a hearing on Davis's motion. After reviewing the transcript, it is apparent to this Court that only a few issues were raised during this hearing. First, Davis objected to proceeding without appointed counsel. Second, he argued that he received ineffective assistance of trial counsel.

On appeal, Davis now alleges several other errors, including that he was illegally arrested and that the trial court erred in instructing the jury. It does not appear, however, that these arguments were raised before the trial court either in Davis's motion for new trial or at the hearing on the motion. Thus, we cannot consider these enumerations of error on appeal.[3]

2. The record shows that, after Davis's trial counsel was relieved, the trial court appointed Wayne Lambert to represent Davis. But Davis sought Lambert's removal, claiming that Lambert "violated [his] constitutional rights." Thus, the trial court relieved Lambert and appointed Paul Fryer. Thereafter, Davis became dissatisfied with Fryer and requested a substitution of counsel, and the trial court relieved Fryer and appointed Richard Waters. Davis subsequently asked Waters to withdraw so that he could obtain yet another lawyer. The trial court granted Waters's motion to withdraw and appointed Gilbert Murrah. Davis apparently was equally dissatisfied with Murrah, and he requested that Murrah withdraw. The trial court appointed Perry, against whom Davis filed a restraining order. Perry subsequently filed a motion to withdraw, which the trial court granted. Finally, the trial court appointed Tony Jones, who was permitted to withdraw after Davis filed a grievance against him with the State Bar.

After Jones withdrew, the trial court informed Davis that he would have to obtain his own attorney or represent himself. Davis apparently was unable to procure an attorney, and he represented himself at the hearing on his motion for new trial. In four enumerations of error, Davis contends that the trial court erred in "forcing" him to proceed with the hearing on his motion for new trial without appointed counsel. We disagree.

"An indigent defendant is entitled only to reasonably effective assistance of counsel, not counsel of his own choosing, and whether to grant a request to replace one court-appointed counsel with another

---

[2] *Sharber v. State*, 268 Ga. App. 365, 367 (1) (601 SE2d 732) (2004).

[3] See *Tremelling v. State*, 263 Ga. App. 418, 420 (2) (587 SE2d 785) (2003).

falls within the trial court's sound discretion."[4] Moreover, "an indigent criminal defendant does not have an absolute right to discharge one court-appointed counsel and have another substituted in his place."[5]

Here, Davis did not seek to discharge just one court-appointed attorney, but many of them. And we find it highly improbable that all six appellate lawyers appointed to represent Davis were incapable of providing competent representation. Our Supreme Court has found that a criminal defendant who discharges counsel as a dilatory tactic may be required by the trial court to represent himself.[6] Specifically, that Court reasoned that such tactic is "the functional equivalent of a knowing and voluntary waiver of appointed counsel."[7] Although Davis was not necessarily attempting to delay proceedings, we nonetheless find his conduct in serially dismissing and instituting grievances against his court-appointed attorneys amounted to a waiver of his right to appointed counsel.[8] Accordingly, the trial court did not abuse its discretion in requiring him to proceed pro se.[9]

3. In three enumerations of error, Davis asserts that the judge erred in failing to recuse himself.[10] Prior to the hearing on his motion for new trial, Davis wrote the judge, requesting that he "recuse [himself] from the case for aiding the conspired procrastination [sic] of this case and [because of his] expressed bias." The judge evidently did not recuse himself.

According to Davis, the trial court should have conducted a hearing on his recusal motion. He also contends that the judge improperly served as a witness by setting forth Davis's troubled history with his multitude of appointed lawyers and thus must be recused. Again, we disagree.

Pursuant to Uniform Superior Court Rule 25.3, a trial judge must promptly act upon a motion to recuse that is accompanied by an affidavit, which sets forth the grounds for recusal. Assuming, for the sake of argument, that Davis's letter to the judge constitutes a motion, it does not comply with the rule as it was not accompanied by an affidavit. Given Davis's failure to provide a legally sufficient reason for the judge's recusal, the trial court did not abuse its

---

[4] *Mondragon v. State*, 270 Ga. App. 780 (607 SE2d 914) (2004).

[5] *Wyman v. State*, 267 Ga. App. 118, 119 (1) (598 SE2d 855) (2004).

[6] See *Bryant v. State*, 268 Ga. 616, 617 (2) (491 SE2d 320) (1997).

[7] (Punctuation omitted.) Id.

[8] See id.

[9] See *Wyman*, supra at 118-119.

[10] Davis apparently seeks the recusal of the judge who presided over the hearing on his motion for new trial. We note that Davis formerly sought the recusal of the trial judge, who voluntarily recused himself from the case.

discretion in declining to hold an evidentiary hearing.[11]

We find Davis's contention that the judge acted as a witness equally unpersuasive. The trial judge simply recounted the host of lawyers it had already assigned to Davis to explain to Davis why the judge was not appointing yet another lawyer. "It is well settled that remarks of a judge assigning a reason for his ruling are neither an expression of opinion nor a comment on the evidence."[12] As the judge's comments were not improper, this alleged error presents no basis for reversal.

4. Davis also argues that the State erred in providing the jury "false" and "deceptive" information about certain equipment located in the courtroom. Although Davis claims that the prosecutor lied about being able to operate "equipment," he does not specify what equipment was in the courtroom or for what purpose such equipment might have been used. It is well settled that a defendant must show harm as well as error to warrant reversal on appeal.[13] Under the circumstances, Davis has not demonstrated harm, and thus he has shown no cause for reversal.

5. In numerous enumerations of error, Davis contends that his trial attorney rendered ineffective assistance. In order to establish such claim, Davis must demonstrate both that his attorney's performance was deficient and that, but for the deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[14] Moreover, "[i]n evaluating an attorney's performance, judicial review is highly deferential with a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[15] In reviewing a trial court's ruling that a defendant has received effective assistance, we affirm unless the ruling is clearly erroneous.[16]

(a) Davis argues that his trial counsel was ineffective in failing to request a DNA test of evidence found in the trunk of the car. The record shows that Davis's defense at trial involved admitting to having vaginal intercourse with the victim, but claiming that it was consensual. Under these circumstances, Davis's attorney surmised

---

[11] See *Christensen v. State*, 245 Ga. App. 165, 170-171 (10) (537 SE2d 446) (2000); *Reese v. State*, 252 Ga. App. 650, 654 (5) (556 SE2d 150) (2001) (if affidavit does not establish that recusal is warranted, a trial judge need take no further action).

[12] *Goings v. State*, 265 Ga. App. 296, 299 (5) (593 SE2d 751) (2004).

[13] See *Baker v. State*, 252 Ga. App. 238, 242 (2) (555 SE2d 899) (2001).

[14] See *Freeman v. State*, 269 Ga. App. 435, 439 (3) (604 SE2d 280) (2004).

[15] (Punctuation omitted.) *Roundtree v. State*, 268 Ga. App. 877 (1) (602 SE2d 890) (2004).

[16] See *Freeman*, supra.

that any DNA test would not benefit Davis, but might in fact buttress the State's case. As counsel's decision was clearly strategic, it provides no basis for reversal.[17]

(b) Davis also alleges that his attorney did not sufficiently prepare and that he failed to call witnesses who would have corroborated his defense. Specifically, Davis maintains that counsel failed to interview his brother who was "essential" to the case. At the hearing on Davis's motion for new trial, however, Davis's attorney testified that he spent "more than one day" in Florida, interviewing witnesses.[18] Thus, there was evidence from which the trial court could conclude that the attorney sufficiently prepared for trial.[19]

Even assuming for the sake of argument that counsel's performance in this regard was deficient, Davis still has not demonstrated prejudice. During the hearing on Davis's motion for new trial, Davis's brother did not testify.[20] "Having failed to present more than his bare assertions that the witness[ ] could have supported [an] alibi defense, [Davis] cannot show his counsel was ineffective in failing to call [him]."[21]

(c) According to Davis, his attorney rendered ineffective assistance in failing to object to the use of his custodial statement. Davis asserts that he was improperly approached by police after invoking his right to counsel and thus the videotape of his statement should have been suppressed. The record shows that, before trial counsel was appointed to the case, Davis stipulated to the admissibility of the statement, conceding that he voluntarily spoke to police after having been read his rights. It is well settled that "[f]ailure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance."[22] Given that Davis stipulated to the statement's admission, his attorney was not required to seek its suppression.

On appeal, Davis argues that the statement should have been suppressed because the "stipulation was entered into as a result of fraud, duress, and mistake." However, it does not appear that Davis raised this argument before the trial court, and we cannot consider issues raised for the first time on appeal.[23]

---

[17] See *Lowe v. State*, 259 Ga. App. 674, 676 (2) (578 SE2d 284) (2003).

[18] Although the attorney could not recall interviewing the brother, he stated that if the witness "would have given [Davis] an alibi" he would have been called. Given that Davis's defense was that intercourse was consensual, we find it highly unlikely that an alibi witness would have strengthened Davis's case.

[19] See *Jividen v. State*, 256 Ga. App. 642, 644 (1) (a) (569 SE2d 589) (2002); *Gadson v. State*, 252 Ga. App. 347, 352 (11) (c) (556 SE2d 449) (2001).

[20] See *Gadson*, supra at 352 (11) (b).

[21] Id.

[22] *Owens v. State*, 271 Ga. App. 365, 370 (5) (609 SE2d 670) (2005).

[23] See *Lewis v. State*, 229 Ga. App. 827, 830 (3) (494 SE2d 678) (1997) ("The failure to raise

(d) Davis maintains that his attorney should have moved to suppress evidence found in the car. According to Davis, police illegally seized the car and any evidence retrieved from it was the fruit of the poisonous tree.

Although Davis's argument in this regard is not entirely clear, he apparently contends that Cofer's affidavit, which accompanied the application for a search warrant, was defective because it improperly identified Davis as the owner of the green Honda.[24] As this Court recently reiterated,

> [a]n affidavit in support of a search warrant is presumed valid unless the record reveals that: (1) the affidavit contains deliberate falsehoods; (2) the affidavit was made with reckless disregard for the truth; or (3) the affiant consciously omitted material facts that, if included, would have indicated the absence of probable cause.[25]

Here, there is no evidence that the affidavit contained deliberate falsehoods, was made with reckless disregard for the truth, or that Cofer consciously omitted material facts. In short, Davis has failed to establish that this alleged defect in the affidavit would have warranted suppression. Accordingly, this argument lacks merit.[26] Davis also suggests that the evidence should have been suppressed because the car was towed from his grandmother's house before the warrant was obtained.[27] Even assuming that Davis, who apparently did not own the car, has standing to seek suppression, he has failed to establish that suppression was warranted. Specifically, Davis provides no legal authority to support his claim that towing the car was improper. Indeed, it may be appropriate for law enforcement to safeguard evidence from tampering pending the issuance of a warrant.[28] Under these circumstances, Davis has failed to show that Cofer's conduct violated the Fourth Amendment.[29] Thus, there is no evidence that a motion to suppress on this ground would have been granted, and Davis's attorney cannot be deemed ineffective on this basis.[30]

---

and pursue [an] issue of ineffectiveness of counsel in the trial court is a procedural bar to making [such argument] in this Court.").

[24] Apparently, the car belonged to Davis's grandmother.

[25] *Crow v. State*, 267 Ga. App. 188, 191 (4) (598 SE2d 824) (2004).

[26] See *Davis v. State*, 267 Ga. App. 245, 246 (2) (599 SE2d 237) (2004).

[27] Apparently, the car was towed to a secure location before the warrant was obtained. However, police did not search the interior of the car until after the magistrate issued a warrant.

[28] See *Clark v. State*, 212 Ga. App. 486, 487-488 (441 SE2d 885) (1994).

[29] See *Johnson v. State*, 263 Ga. App. 443, 445-446 (1) (587 SE2d 775) (2003).

[30] See *Davis*, supra.

(e) In two enumerations of error, Davis asserts that trial counsel failed to object to certain statements made by the prosecutor. According to Davis, during closing argument, the prosecutor improperly commented on his failure to testify. Generally, a prosecutor's comments regarding the defendant's decision not to testify constitute reversible error if "(1) the prosecutor's manifest intention was to comment on the accused's failure to testify, or (2) the remark was of such a character that a jury would naturally and necessarily take it to be a comment on the accused's failure to testify."[31]

Here, Davis complains of two statements made by the prosecutor: (1) the prosecutor's statement that "there has been nobody here to testify" regarding an alleged fight; and (2) "I don't think even Norman Davis claims" that the victim looked old enough to be a school teacher. Contrary to Davis's contention on appeal, neither of these statements "directly or naturally implicate[s] [his] decision not to testify."[32] Accordingly, such cannot serve as the basis of an ineffective assistance claim.[33]

*Judgment affirmed. Johnson, P. J., and Barnes, J., concur.*

DECIDED MAY 23, 2005 — 

Norman Davis, *pro se.*
*J. Brown Moseley, District Attorney, Charles M. Stines, Joseph K. Mulholland, Assistant District Attorneys*, for appellee.

---

[31] (Punctuation omitted.) *Smith v. State*, 279 Ga. 48, 49 (2) (610 SE2d 26) (2005).

[32] Id. at 50.

[33] See *Cummings v. State*, 261 Ga. App. 281, 284 (6) (b) (582 SE2d 231) (2003).